**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

RICHARD F. ZELLER,

                Plaintiff

    v.

SOUTH CENTRAL EMERGENCY
MEDICAL SERVICES, INC., et al.,

                Defendants

CIVIL ACTION NO. **1:13-CV-2584**

(KANE, J.)
(MEHALCHICK, M.J.)

**MEMORANDUM**

This action was filed by Plaintiff, Richard F. Zeller, against his former employer, Defendants South Central Emergency Medical Services, Inc. and Jason Campbell, in which Plaintiff alleges claims arising under the Family and Medical Leave Act, 29 U.S.C. § 2601, et seq., and which relate to Plaintiff's employment with Defendant and his allegedly unlawful and retaliatory discharge. The parties have requested that the Court resolve two discovery disputes – the first with respect to the issuance of subpoenas to Plaintiff's current and prospective employers, and the second regarding the allocation of costs and "first review" of e-discovery sought by the Defendants.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

Plaintiff was employed by Defendant South Central Emergency Medical Services, Inc. from approximately March of 1998 until April 12, 2012. (Doc. 1). He was out of work under the FMLA from December 1, 2011 through early January 2012. (Doc. 1). Plaintiff alleges that upon his return to work in January 2012, Defendants did not restore him to his previous position, and retaliated against him for his use of FMLA leave, culminating in his discharge on

April 12, 2012. (Doc. 1). Defendants deny these allegations and submit that Plaintiff was fired due to excessive absenteeism.

Plaintiff filed the instant lawsuit on October 17, 2013. The parties have engaged in discovery. Plaintiff's answers to Defendants' Interrogatories have revealed that Plaintiff communicated with a number of doctors and witnesses via email, and also applied for a number of jobs online following his separation from Defendants. As such, the parties have endeavored to begin the process of e-discovery to recover those emails. Though several issues related to the e-discovery have been resolved by the parties without court intervention, they are still at odds over the allocation of costs of the e-discovery and the question of which party is entitled to "first review" of the documents procured through e-discovery.

Additionally, Defendants have served Plaintiff with a Notice of Intent to Subpoena potential employers with whom Plaintiff sought employment, as well as Plaintiff's current employer. Plaintiff objects to the issuance of these subpoenas, and has moved for a protective order precluding the issuance of these subpoenas.[1]

## II.   DISCUSSION

Pursuant to Fed. R. Civ. P. 26(b)(1) and *Pearson v. Miller*, 211 F.3d 57, 65 (3d Cir.2000), parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense" and "the court may order discovery of any matter relevant to the subject matter involved in the action", although "relevant information need not be admissible at trial if

---

[1] No formal motion was filed, but Plaintiff indicated that a protective order was the relief being sought during the Court's teleconference regarding the discovery issues in this case.

the discovery appears reasonably calculated to lead to the discovery of admissible evidence".

Pursuant to *Sempier v. Johnson*, 45 F.3d 724, 734 (3d Cir.1995); *Farmers & Merchants Nat. Bank v. San Clemente Financial Group Securities, Inc.,* 174 F.R.D. 572, 585 (D.N.J.1997), and *In re Wilson,* 451 F.3d 161, 164 (3d Cir.2006), district courts have broad discretion to manage discovery.

Importantly, pursuant to Fed. R. Civ. P. 26(b)(2)(C), the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:

    i.    the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;

    ii.    the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or

    iii.    the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues.

Further, "the Court has a responsibility to protect privacy and confidentiality interests" and "has authority to fashion a set of limitations that allow as much relevant material to be discovered as possible ... while preventing unnecessary intrusions into legitimate interests that may be harmed by the discovery of material sought". *E.E.O.C. v. Princeton Healthcare Sys.*, 2012 WL 1623870 (D.N.J. May 9, 2012); *citing Schmulovich v. 1161 Rt. 9 LLC*, 2007 WL 2362598 (D.N.J.2007); *see also Pearson*, 211 F.3d at 65; Fed. R. Civ. P. 26(c).

The Rule 26 relevance standard depends upon the context of each particular action, and the determination of relevance is within the discretion of the District Court. *See Barnes Found. v. Twp. of Lower Merion*, 1996 WL 653114, at *1 (E.D.Pa.1996). "[C]ourts have construed this rule liberally, creating a broad vista for discovery." *E.E.O.C. v. Princeton Healthcare Sys.*, 2012 WL 1623870, *supra*; *citing Takacs v. Union County*, 2009 WL 3048471, at *1 (D.N.J.2009) (*citing Tele–*

*Radio Sys. Ltd. v. DeForest Elecs., Inc.*, 92 F.R.D. 371, 375 (D.N.J.1981)); *see also Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Evans v. Employee Benefit Plan*, 2006 WL 1644818, at *4 (D.N.J.2006); *Jones v. Derosa*, 238 F.R.D. 157, 163 (D.N.J.2006); *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J.2000); *Lesal Interiors, Inc. v. Resolution Trust Corp.*, 153 F.R.D. 552, 560 (D.N.J.1994); *Glenz v. Sharp Electronic Corp.*, 2010 WL 2758729 (D.N.J.2010). "Review of all relevant evidence provides each party with a fair opportunity to present an effective case at trial." *Jones*, 238 F.R.D. at 163; *see also Caver*, 192 F.R.D. at 159; *Nestle Foods Corp. v. Aetna Cas. & Sur. Co.*, 135 F.R.D. 101, 104 (D.N.J.1990). "Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation ... [and] either party may compel the other to disgorge whatever facts he has in his possession." *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *see also Unicasa Marketing Group, LLC v. Spinelli*, 2007 WL 757909 (D.N.J.2007); *Kopacz v. Delaware River and Bay Authority*, 225 F.R.D. 494, 497 (D.N.J.2004).

A.  SUBPOENAS TO PLAINTIFF'S CURRENT AND PROSPECTIVE EMPLOYERS

Plaintiff is seeking damages including back pay and benefits and front pay and benefits. Further, whether Plaintiff mitigated his damages by seeking employment following his termination from Defendant is at issue in this case. Defendants have served Plaintiff with a Notice of Intent to Subpoena all potential employers with whom Plaintiff sought employment,

as well as a subpoena upon his current employer.[2] Plaintiff objects to these subpoenas and seeks

a protective order precluding Defendants from issuing them.

Federal Rule of Civil Procedure 26(c) provides the Court with authority to enter a

protective order "to protect a party or person from annoyance, embarrassment, oppression, or

undue burden or expense[.]" Fed. R. Civ. P. 26(c)(1). Upon a showing of good cause, the Court

may "forbid[ ] the disclosure or discovery," or may "forbid[ ] inquiry into certain matters, or

limit[ ] the scope of disclosure or discovery to certain matters[.]" *Id*. The party seeking a

protective order bears the burden of demonstrating that good cause exists to limit or foreclose

discovery, and must demonstrate a particular need for protection. *Cipollone v. Liggett Group, Inc.*,

785 F.2d 1108, 1121 (3d. Cir.1986); *Hite v. Peters*, 2009 WL 1748860 (D.N.J. June 19, 2009).

Plaintiff objects to the proposed subpoenas on the grounds that the information sought is not

relevant to the issues in this case, and Plaintiff has already produced all relevant information

about his post-termination compensation, and is willing to supplement the same through this

litigation in order to demonstrate mitigation of damages and to determine front pay. (Doc. 18).

Defendants submit that Plaintiff has failed to participate in discovery in good faith by producing

full answers to Defendants' interrogatories and all documentation related to his alleged

damages.[3] (Doc. 19).

---

[2] Plaintiffs do not object to the subpoenas address to Pennsylvania employers, but object
to the issuance of such subpoenas to employers in Arizona, where Plaintiff now resides.

[3] The Court is not making any finding of bad faith on the part of the Plaintiff. Indeed,
the parties in this matter have both demonstrated good faith and compliance with the Federal
and Local Rules of Civil Procedure. Without need for intervention by the Court, the parties

Individuals have "a legitimate privacy interest in information regarding [their] subsequent employment". *E.E.O.C. v. Princeton Healthcare Sys.*, 2012 WL 1623870 (D.N.J. May 9, 2012); *citing Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y.2010); *see also Mirkin v. Winston Res., LLC*, 2008 WL 4861840 (S.D.N.Y.2008). "[C]ourts ... have recognized that because of the direct negative effect that disclosures of disputes with past employers can have on present employment, subpoenas in this context, if warranted at all, should be used only as a last resort". *Warnke*, 265 F.R.D. at 69; *see also Conrod v. Bank of New York*, 1998 WL 430546 (S.D.N.Y.1998); *Gambale v. Deutsche Bank AG*, 2003 WL 115221 (S.D.N.Y.2003); *Mirkin*, 2008 WL 4861840. "If filing what ... [appears to be] a fairly routine case alleging individual employment discrimination opens up the prospect of discovery directed at all previous, current, and prospective employers, there is a serious risk that such discovery can become an instrument of delay or oppression." *Perry v. Best Lock Corp.*, 1999 WL 33494858 (S.D.Ind.1999). "The concern that employers might as a routine matter undertake extensive discovery into an employee's background or performance on the job to resist claims ... is not an insubstantial one." *E.E.O.C. v. Princeton Healthcare Sys.*, 2012 WL 1623870; *quoting McKennon v. Nashville Banner Publ. Co.*, 513 U.S. 352, 363, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995) (the Court also noting that "the authority of the courts to award attorney's fees ... and ... to invoke the provisions of Rule 11 of the Federal Rules of Civil Procedure will deter most abuses" and "[t]he

---

resolved most of their disputes, including the temporal scope and terms of the email search and the identification of an independent forensic examiner.

district court's power under Rule 26(b)(2) provides another mechanism for avoiding such abuses.")

Further, a plaintiff may have "a legitimate concern that a subpoena sent to her current employer under the guise of a discovery request could be a tool for harassment and result in difficulties in her new job. *Graham v. Casey's Gen. Stores, Inc.*, 206 F.R.D. 251, 256 (S.D.Ind.2002). Similarly, "the potential burdens of ... [this type of discovery] are also substantial in terms of broadcasting to a large group of businesses that [the defendant] view [plaintiff] as an untrustworthy troublemaker." *Perry*, 1999 WL 33494858.

In response to written discovery requests which sought a computation of his alleged damages, a detailed description of all efforts to obtain employment, information on his current employer, all documents supporting his alleged damages, and all documents supporting Plaintiff's claim that he attempted to mitigate damages, Plaintiff provided Defendants with a list of places (without addresses) where he allegedly sought employment "on line", some W-2s and 1099s, and his resume. (Doc. 19).[4] Despite these responses, Defendants submit that they are entitled to and should be able to obtain more detailed information from Plaintiff's current and prospective employers, such as employment applications, salary/benefit packages, references, physical examinations, job duties, minimum qualifications, interview requests, job offers, results of those job offers, attendance records and disciplinary records. (Doc. 19). In an attempt

---

[4] These documents were not provided to the Court, but the Defendants submit that these are the items provided to them, and Plaintiff has not disputed this.

to narrowly tailor their requests, Defendants have proposed the following subpoena language

with respect to Plaintiff's current employer:

> All handwritten, typewritten and/or electronic employment applications, references, reference letters, employment history, offers of employment, rejections of employment, terms of employment, employment contracts, physical examinations, medical records, payroll records, W-2's, bonus programs, bonus disbursements, overtime payments, employee handbooks, performance evaluations, change in employment forms, benefit information (including, but not limited to, medical, dental, vision, life, short/long term disability benefits and 401 (k) employer-match agreements), 401 (k) contribution schedules, vacation/PTO time accruals, work schedules, job duties, job descriptions, attendance records, vacation/PTO/FMLA/sick day requests, disciplinary documentation and termination records pertaining to Richard Zeller.

With respect to Plaintiff's prospective employers, Defendants propose the following subpoena

language:

> All handwritten, typewritten and/or electronic documents, correspondence, writings, notes, interviews, declarations, articles, transcripts, resumes, job postings, employment opportunities, recruiter communications, curriculum vitae, employment applications, references, letters of recommendation, background checks, compensation requirements, offers of employment, withdrawal of offers of employment, rejection of offers of employment, and/or other tangible or intangible items related to Richard Zeller.

Defendants, the employer, bear the burden of proving a failure to mitigate. *Booker v.*

*Taylor Milk Co., Inc.*, 64 F.3d 860, 864 (3d Cir.1995) (*citing Robinson v. SEPTA, Red Arrow*, 982

F.2d 892, 897 (3d Cir.1993)). Upon a finding of an employee's failure to mitigate, a back pay

award must be reduced by the amount the employee could have earned with reasonable

diligence. *Id*. at 866; *see also Langen v. Wells Fargo Bank, N.A.*, 2012 WL 4473305 (C.D. Ill. Sept.

26, 2012) (where plaintiff sought back pay and front pay as part of her damages and defendant-

employer sought employment information from the plaintiff's subsequent employers, the court

found that the defendant was entitled to the discovery because "the information sought by the

Subpoena is relevant. Mitigation of damages is an issue in this case.") The court in *Langen*

noted that the defendant had first attempted to secure the information from the plaintiff in

discovery. The court found that the information sought via subpoena was not duplicative of the

information provided in discovery and stated that:

> The printout of gross and net pay does not disclose whether Langen is receiving
> any other benefits such as health insurance, retirement benefits, or flexible
> spending accounts. . . The information provided to date also does not provide
> complete information about discipline, hours of employment, and days off due to
> sickness. . . Given the lack of complete information, the Subpoena is not
> duplicative or unnecessary.

*Langen*, 2012 WL 4473305.

The Court finds that Plaintiff's post-termination employment records are relevant as to

the issue of mitigation of damages, and specifically, the amount that Plaintiff could have earned

with reasonable diligence. The employment records sought by Defendants from Plaintiff's

current and prospective employers are likely to contain the information sought by Defendants,

and a request for these documents thus is reasonably calculated to lead to the discovery of

admissible evidence on the issue of mitigation. *See Noble v. Ruby Tuesdays Restaurants, Inc.*, 2007

WL 3125131, at *2 (S.D.Ohio Oct.23, 2007) (in Title VII employment action, "[e]mployment

records are relevant to the issues of mitigation and damages[.]"); *E.E.O.C. v. Woodmen of World*

*Life Ins. Soc.*, 2007 WL 649298, at *5 (D.Neb. Feb.1, 2007) (in Title VII employment action,

court found that "although the plaintiffs have provided certain financial information, the

employment records sought [from plaintiff's employers for whom plaintiff worked subsequent to

her employment with defendant] ... may contain information relevant to [plaintiff's] mitigation

of damages. Additionally, [plaintiff's] general job performance records reasonably bear on the

defendant's stated reason for [plaintiff's] demotion[.]"); *Walker v. Northwest Airlines Corp.*, 2002

WL 32539635, at *2 (D.Minn. Oct.28, 2002) ("[B]oth past and post-termination wage and employment records are highly relevant to the issue of mitigation and to the computation of damages in this case .... [O]ther types of employment information such as disciplinary records, resumes, and applications ... are reasonably calculated to lead to admissible evidence.").

Moreover, the subpoena language proposed by Defendants is narrow and not overly broad or intrusive. In his submission, Plaintiff relies on the decisions in *Perry v. Best Lock Corp.*, 1999 WL 33494858 (S.D. Ind. Jan. 21, 1999) and *Boykins v. inVentiv Commercial Servs., L.L.C.*, 2014 WL 413538 (D.N.J. Feb. 4, 2014) to support his motion for a protective order and to quash the subpoenas. These cases are distinguishable from the proposed subpoenas in this case. In *Boykins*, defendants sought to compel plaintiffs' entire file from their current employers. Here, Defendants are seeking specific documents relevant to Plaintiff's mitigation of damages. In *Perry*, defendants sought a "broad sweep for documents held by so many former and prospective employers." Again, Defendants in this matter seek to confine their subpoenas to a narrower scope. Further, the defendants in *Perry* sought to issue subpoenas on nineteen former, current and prospective employers. In this matter, Plaintiff has identified five businesses in Arizona at which he sought employment. (Doc. 19, p. 13). One of these businesses is later identified as Plaintiff's current employer. (Doc. 19). Again, the discovery sought by Defendants is less intrusive than that sought by the defendants in *Perry*.

The Court concludes that Defendant is entitled to discovery of documents bearing on mitigation and that the employment records are relevant to the issue of mitigation. However, the Court is concerned with the potential burden this discovery could have on Plaintiff with his current employer. *See Graham*, 206 F.R.D. 251 and *Perry*, 1999 WL 33494858, *supra*. Despite

Plaintiff's failure to date to provide a complete answer to Defendants' Interrogatory #9 (*see* Doc. 19, p. 13), Plaintiff should be afforded the opportunity to provide the information sought by Defendants. As such, Plaintiff will be granted thirty days in which to fully respond to Interrogatory #9. Specifically, Plaintiff is directed to provide Defendants with the following information requested but not provided: title or description of current position; description of job duties; hours worked per week; and description of all compensation including salary <u>and benefits</u> received. Additionally, as Plaintiff has submitted that he is willing to supplement his response in order to demonstrate mitigation of damages (*see* Doc. 18, p.2), Plaintiff is directed to provide to Defendants the information sought in Defendants' proposed subpoena to Plaintiff's current employer. (*See* Doc. 19, p. 23). If Plaintiff cannot or will not provide the information sought within thirty days, which this Court has determined to be relevant to the issues in this case, Defendants will be permitted to subpoena the same from Plaintiff's current employer. With regard to Defendants' proposed subpoenas to Plaintiff's prospective employers, the Court finds that the proposed subpoena language is narrowly constructed and reasonably calculated to lead to the discovery of admissible evidence. As such, Plaintiff's motion for a protective order with regard to these subpoenas will be denied.

### B. FIRST REVIEW OF DOCUMENTS

The parties have endeavored to begin the process of e-discovery to recover Plaintiff's emails, and have resolved several issues relating to the planned e-discovery, but have asked this Court to resolve the issue of "first review" of documents identified as a result of an agreed upon search of Plaintiff's emails, and the matter of cost-sharing. Plaintiff asserts that he is entitled to a "first review" of all documents produced as a result of the e-discovery process. Defendants

assert that once the independent forensic examiner completes the process of retrieving the emails resulting from the search of Plaintiff's email account, those documents which are not designated as resulting from searches including Plaintiff's counsel's name, and other potentially privileged individual, should be forwarded directly to Defendants so they can commence their review of the materials, and any potentially privileged results would be forwarded to Plaintiff for his review and creation of a privilege log, if necessary, before production to the Defendants. Neither party has cited to any rule or case law which might provide insight or clarification on this issue. The crux of Defendants' argument is one concerned with timing and how long it might take for discovery to be produced from Plaintiff if he gets a "first review."

While appreciating Defendants' concern over being able to complete discovery in the time frame set in this case, the Court notes that discovery is not due until September 16, 2014, 17 weeks from today. Additionally, the typical course of discovery is that upon request by a party for documents, the responding party will assemble documents responsive to those requests, and produce the same. If the responding party deems any of the documents responsive to the request to be privileged, he may withhold those documents and produce a privilege log for determination of whether the documents are in fact privileged. *See generally* Fed. R. Civ. P. 26, et seq. Additionally, while recognizing that the scope of discovery is fairly broad, Plaintiff has no obligation to produce emails that are wholly irrelevant to either party's claim or defense. *See* Fed. R. Civ. P. 26(b)(1). For example, one of the search terms agreed upon by the parties is Plaintiff's wife's name. It is conceivable that an email in which Plaintiff asks his wife what she wants for dinner could be included in the search results. This email would have no relevancy to the claims or defenses in this case, and while producing the same would likely not cause any

harm, it would most likely be outside the scope of the discovery request and should therefore not be included in Plaintiff's responses to the request. Of more concern is the possibility that despite the parties' best efforts to arrive at search terms that would isolate any potentially privileged documents from immediate production to the Defendants, it is quite possible to imagine a scenario wherein an email is produced directly to the Defendants that was sent by Plaintiff to a third party whose name was not included on the search term list but is indeed privileged in some manner (e.g. an email to a potential expert witness that may be protected by the work-product privilege).[5] Indeed, even if some of Plaintiff's communications with his medical providers may be relevant to the case and should be produced, these documents must be first reviewed by Plaintiff and his counsel for privilege issues.

Based on the above, the Court finds that Plaintiff is entitled to a "first review" of the results of the independent forensic examination of Plaintiff's email account. However, the Court is cognizant of the deadlines in place for discovery. As such, Plaintiff is ordered to provide Defendants with the username and password for Plaintiff's email account by 12:00 p.m. on Thursday, May 22, 2014. Additionally, upon receipt of the results of the examination of Plaintiff's email account, Plaintiff is instructed to review and identify to Defendants documents responsive to Defendants' requests in good faith and in a timely manner. Such production should occur no later than one week following Plaintiff's receipt of the results of the search.

---

[5] By using this example, the Court in no way is implying that such an email exists, or that work-product or any other privilege definitively protects it from production.

C.  COST OF FORENSIC EXAMINATION OF PLAINTIFF'S EMAILS

It is typically presumed that a responding party bears its own costs of complying with discovery requests. 1 eDiscovery & Digital Evidence § 9:2; *relying on Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S. Ct. 2380, 2393, 57 L. Ed. 2d 253, Fed. Sec. L. Rep. (CCH) P 96470, 25 Fed. R. Serv. 2d 541 (1978); *OpenTV v. Liberate Technologies*, 219 F.R.D. 474, 57 Fed. R. Serv. 3d 539 (N.D. Cal. 2003); *see D'Onofrio v. SFX Sports Group, Inc.*, 254 F.R.D. 129 (D.D.C. 2008); Peskoff v. Faber, 251 F.R.D. 59 (D.D.C. 2008) (cost of search properly allocated to producing party where cost did not represent burden or expense so undue as to justify shift to requesting party); *Cason-Merenda v. Detroit Medical Center*, 2008 WL 2714239 (E.D. Mich. 2008) (where producing party elected to suffer expense of discovery and only then seek contribution from requesting party, court denied request for contribution). A court may order a cost-shifting protective order only upon motion of the responding party to a discovery request and "for good cause shown." The responding party bears the burden of proof on a motion for cost-shifting. *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 283, 92 Fair Empl. Prac. Cas. (BNA) 684, 56 Fed. R. Serv. 3d 326 (S.D. N.Y. 2003), *citing* Fed. R. Civ. P. 26(c). *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 316-324, 92 Fair Empl. Prac. Cas. (BNA) 684, 56 Fed. R. Serv. 3d 326 (S.D. N.Y. 2003), *citing* Fed. R. Civ. P. 26(c).

In the matter presently before the Court, there is no formal motion for a cost-shifting protective order, but the issue has been raised by the parties in their submissions to the Court on the outstanding discovery issues. (Doc. 18 and Doc. 19). Defendants submit that Plaintiff should equally share in the cost of the e-discovery. Plaintiff submits that since he is not seeking

the e-discovery and forensic analysis of Plaintiff's email account, he should not have to bear any

of the cost of the analysis.

> Federal Rule of Civil Procedure 26(c) provides, in pertinent part, as follows:
>
> A party or any person from whom discovery is sought may move for a protective order in the court where the action is pending.... The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense....
>
> Fed. R. Civ. P. 26(c)(1).

The rules for discovery have long allowed a trial judge to shift the cost of pretrial discovery.

*Boeynaems v. LA Fitness Intern., LLC*, 285 F.R.D. 331, 335 (E.D.Pa. Aug. 16, 2012); *citing*

*Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 358, 98 S. Ct. 2380, 2393, 57 L. Ed. 2d 253

(1978) (under the discovery rules the court has discretion to grant orders protecting the

responding party from undue burden and expense, including orders conditioning discovery on

the requesting party's payment of the costs of discovery).

Rule 26(b)(2)(B), addresses the production of ESI that is not reasonably accessible.

*Cochran v. Caldera Med., Inc.*, 2014 WL 1608664 (E.D. Pa. Apr. 22, 2014). The Rule provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or costs. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.
>
> Fed.R.Civ.P. 26(b)(2)(B).

Courts have interpreted the above Rule and have held that "[t]he obvious negative

corollary of this rule is that accessible data must be produced at the cost of the producing party;

cost-shifting does not even become a possibility unless there is first a showing of inaccessibility." *Peskoff v. Faber*, 244 F.R.D. 54, 62 (D.D.C.2007). "Thus, it cannot be argued that a party should ever be relieved of its obligation to produce accessible data merely because it may take time and effort to find what is necessary." *Id. See also Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 284 (S.D.N.Y.2003) ("It is worth emphasizing again that cost-shifting is potentially appropriate only when inaccessible data is sought. When a discovery request seeks accessible data—for example, active on-line or near-line data—it is typically inappropriate to consider cost-shifting.") In this case, neither party has submitted that the information sought is accessible (see Doc. 18 and Doc. 19) and therefore the Court will presume that the parties are in agreement that the information sought is inaccessible and will move to the next step of the analysis.[6]

The *Zubulake* Court set forth a seven-factor test to determine whether discovery costs should be shifted, which are weighted more-or-less in the following order:

> (1) the extent to which the request is specifically tailored to discover relevant information;

> (2) the availability of such information from other sources;

> (3) the total cost of production, compared to the amount in controversy;

---

[6] Moreover, the Court notes that under Rule 26(b)(2)(C)(iii), the court could order the plaintiffs to share the costs of producing ESI discovery, even if most of the ESI is accessible. *Cochran v. Caldera Med., Inc.*, 2014 WL 1608664 (E.D.Pa. Apr. 22, 2014)*; see also* Shira A. Scheindlin & Daniel J. Capa, Electronic Discovery and Digital Evidence 314 (2009) ("[c]ostshifting is available even for accessible data based on the proportionality factors set forth in Rule 26(b)(2)(C)").

(4) the total cost of production;

(5) the relative ability of each party to control costs and its incentive to do so;

(6) the importance of the issues at stake in the litigation; and

(7) the relative benefits to the parties of obtaining the information.

216 F.R.D. at 284.

The Third Circuit has adopted these criteria for when cost-shifting might be appropriate in electronic discovery. *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.*, 2013 WL 541972 (D.N.J. Feb. 11, 2013); *see Wachtel v. Guardian Life Ins.*, 2007 U.S. Dist. LEXIS 43842, 2007 WL 1752036 (D.N.J. June 18, 2007) (following *Zubulake*); *see also Boeynaems v. La Fitness Int'l*, 285 F.R.D. 331, 336 (E.D.Pa.2012) (stating that *Zubulake* is undoubtedly the leading opinion in regard to standards for requiring that the requesting party share discovery costs).

At least two of these factors are not identified by the parties. Namely, the parties were unable to identify the total cost of production of the search, compared to the amount in controversy and the resources to each party. The Court finds that the request is specifically tailored to discovery relevant information, as the parties have agreed on the search terms to be used and a specific time frame for emails to be searched. Neither party has identified another source from which the information sought might be available, and the Court finds that, as the e-discovery is being sought specifically to review communications between Plaintiff and his doctors and witnesses, and for mitigation purposes (Doc. 19), there is no other source which could possibly be available. As the parties have agreed to use an independent vendor to conduct the forensic examination of Plaintiff's emails, neither party has any more ability than the other to control the cost. Finally, with regard to the final two factors, the Court finds that the information sought is important to the issues at stake in the litigation, including Plaintiff's

mitigation efforts and whether Plaintiff is an individual meeting the eligibility criteria for FMLA. As such, it is to the benefit of both parties to obtain the information sought.[7]

Having considered the above factors, the Court finds that some cost-shifting is appropriate. Plaintiff and Defendant should share equally in the cost of restoring and searching Plaintiff's emails, up to a maximum contribution by Plaintiff of One Thousand Five Hundred Dollars ($1500.00). *See Semsroth v. City of Wichita*, 239 F.R.D. 630, 640 (D. Kan. 2006); *Zubulake v. UBS Warburg LLC*, 216 F.R.D. 280, 290 (S.D.N.Y. 2003) (as a general rule, where cost-shifting is appropriate, only the costs of restoration and searching should be shifted). Should either party wish to print or copy any of the results of the search, each party is to bear their own costs.

III.   **CONCLUSION**

Based on the foregoing, Plaintiff's motion for a protective order with regard to the subpoenas proposed by Defendants is granted in part and denied in part. Plaintiff is directed to respond completely, as outlined above, to Defendants' Interrogatory #9, and further to provide the information sought in Defendants' proposed subpoena to Plaintiff's current employer, within thirty days from the date of the Order accompanying this Memorandum. Plaintiff's motion with regard to Plaintiff's prospective employers is denied, and Defendants shall be allowed to issue the subpoenas, using the language proposed by Defendants in Doc. 19 at page 23.

---

[7] On this last factor, the Court notes that Plaintiff has stated that he may use the information produced as a result of the forensic examination as well.

   On the issue of the e-discovery sought by Defendants, the Court finds, for the reasons set forth above, that Plaintiff is entitled to a first review of the results of the forensic examination. Plaintiff shall provide Defendants the username and password for Plaintiff's email account by 12:00 p.m. on Thursday, May 22, 2014. Additionally, upon receipt of the results of the examination of Plaintiff's email account, Plaintiff is instructed to review and identify to Defendants items responsive to Defendants' requests in good faith and in a timely manner. Such review and identification should occur no later than one week following Plaintiff's receipt of the results of the search. Additionally, for the reasons set forth above, Plaintiff and Defendants should share equally in the cost of restoring and searching of Plaintiff's emails, up to a maximum contribution by Plaintiff of One Thousand Five Dollars ($1500.00). Should either party wish to print or copy any of the results of the search, each party is to bear their own costs.

   An appropriate Order will follow.


**Dated: May 20, 2014**                              *s/ Karoline Mehalchick*
                                                     **KAROLINE MEHALCHICK**
                                                     **United States Magistrate Judge**